UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EUNICE SMITH,
    Plaintiff,

v.

AMERICAN FEDERATION OF STATE AND
MUNICIPAL EMPLOYEES (AFSCME)
COUNCIL 4, ET AL.,
    Defendants.

Case No. 05cv829 (JBA)

## RULING ON DEFENDANTS AFSCME COUNCIL 4 AND SALVATORE LUCIANO'S MOTION TO DISMISS [DOC. #21]

Plaintiff Eunice Smith alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; interference with contract pursuant to 42 U.S.C. §§ 1981 and 1985; violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 et seq.; the Connecticut "whistleblower" statute, Conn. Gen. Stat. § 31-51m; and intentional infliction of emotional distress against defendants Council 4 of the American Federation of State and Municipal Employees ("Council 4"), Local 1565 of AFSCME ("Local 1565"), Salvatore Luciano in his individual and official capacities as Executive Director of AFSCME Council 4, Thomas Mulhall in his individual and official capacities as President of AFSCME Local 1565, and AFSCME Local 1565 Steward Patricia Gonzales in her individual capacity.[1]

---

[1] No appearances have been entered on behalf of Mullhall, who was served on December 1, 2005 [Doc. #8], or Gonzales, who

1

Defendants Council 4 and Luciano now move to dismiss [Doc. #21] all counts of plaintiff Eunice Smith's Amended Complaint [Doc. #19] pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(5). For the following reasons, defendants' Motion will be granted in part.

I. **Background**

For purposes of this Motion to Dismiss, the facts alleged by plaintiff in her Amended Complaint and her June 18, 2004 complaint filed with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") (CHRO Aff., Def. Ex. C) are taken as true.[2]

On July 13, 1990, plaintiff Eunice Smith was hired as a corrections officer for the State of Connecticut Department of Correction ("CT DOC"), where she was represented by Local 1565, a union affiliate of AFSCME Council 4. A collective bargaining agreement ("CBA") between Council 4/Local 1565 and the CT DOC was in place at all times relevant to this action. Luciano was Council 4 executive director, Mulhall was Local 1565 president,

---

was served on December 8, 2005 [Doc. #9].

[2] "Although we generally consider only the complaint on a motion to dismiss, a complaint 'include[s] any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Joffee v. Lehman Bros., No. 06-0903-cv, 2006 U.S. App. LEXIS 31487, at *4 n.2 (2d Cir. Dec. 19, 2006) (citing, e.g., Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)). Here, the CHRO complaint was referenced in the Complaint. (See Am. Compl. ¶ 38.) However, the arbitration award made pursuant to the CBA, which defendants attached to their Motion, was not.

2

and Gonzales was Local 1565 steward.  Throughout her employment, plaintiff perceived that Local 1565 failed to take seriously CT DOC's unfair treatment of African-American employees, often discounting their views in Union decision-making processes. Plaintiff was terminated from her employment on October 12, 1995, but was reinstated to her former positions as a CT DOC corrections officer on January 31, 1997 by Order of the CHRO.

After reinstatement, plaintiff continued to report to Local 1565 what she believed were DOC's numerous racially discriminatory acts and policies, but Local 1565 consistently failed to challenge the DOC.  On November 11, 2003, plaintiff's employment was again terminated.  She filed a CHRO complaint against Council 4 and Local 1565 on June 18, 2004, alleging inter alia, that she was "denied proper representation in or about January 26, 2004," "retaliated against in or about January 24, 2004," and "that [the union] aided and abetted [the CT DOC] from November 2003 until January 25, 2004" in discriminating against her.  The allegations in that CHRO complaint are substantially recited in her Amended Complaint.

**II.  Standard**

When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  A complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To survive the motion, the plaintiff must set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47 (quoting Fed. R. Civ. P. 8(a)(2)); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**III. Discussion**

Defendants Council 4 and Luciano move to dismiss all counts of the Amended Complaint against them on three grounds: untimely filing of the CHRO complaint (Counts 1, 2, 5); failure to state a claim upon which relief can be granted (Counts 3, 4, 6, 7, 8); and untimely service of process (all counts).

    **A. Untimely filing of administrative complaint (Counts 1: Title VII; Counts 2 and 5: CFEPA)**[3]

---

[3] While these counts are also brought against the individual defendants, because Title VII and CFEPA claims are not cognizable against individuals, the Court construes Counts 1, 2, and 5 as applying only to AFSCME, Council 4, and Local 1565. See Schiano

4

Defendant Council 4 argues that plaintiff's Title VII and CFEPA claims should be dismissed because plaintiff "did not exhaust administrative remedies by bringing a timely complaint to the [Equal Employment Opportunity Commission ("EEOC")] and/or CHRO." (Def. Mem. [Doc. #23] at 3.) Defendant argues that these claims fail because plaintiff did not allege in her EEOC/CHRO charge filed on June 18, 2004 any discriminatory conduct by Council 4 occurring within the allowable time period, which is 300 days prior to the filing of the charge for Title VII claims and 180 days prior for CFEPA claims. (Def. Mem. at 4-5.)

Title VII and CFEPA claims must have been encompassed in the plaintiff's EEOC and CHRO complaints[4] (or "charge"), or be based on limited classes of conduct subsequent to that complaint. See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397,

---

v. Quality Payroll Sys., 445 F.3d 597, 608 (2d Cir. 2006) ("An individual defendant cannot be held personally liable under Title VII.") (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313-14 (2d Cir. 1995)); Edwards v. New Opportunities, Inc., No. 05CV1238 (JCH), 2006 U.S. Dist. LEXIS 40121, at *11-12 (D. Conn. June 16, 2006) ("Title VII permits a plaintiff to sue her employer, but not individual supervisors or other employees. . . . Similarly, the Connecticut Supreme Court has found that there is no individual liability under the parallel provision of the CFEPA.") (citing Perodeau v. City of Hartford, 792 A.2d 752 (Conn. 2002)).

[4] The CHRO and EEOC have a work-sharing agreement that provides, "'Charges that are received by the [CHRO], whether in person or by mail, and jurisdictional with the EEOC and timely filed by the charging party or his/her representative will be automatically dual-filed with the EEOC and vice versa. The date the charge was received will be the date of filing.'" Lewis v. Conn. Dep't of Corr., 355 F. Supp. 2d 607, 616 (D. Conn. 2005).

5

1404 (2d Cir. 1993) (recognizing "three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action").  Since plaintiff filed her CHRO/EEOC complaint on June 18, 2004, the CHRO filing period reaches back to December 22, 2003 and the EEOC filing period to August 25, 2003.

Counts 1, 2, and 5 of plaintiff's Amended Complaint allege that Council 4 failed to represent plaintiff on account of her race and retaliated against her for actively opposing discrimination in her capacity as union steward.  The only timely allegations in plaintiff's CHRO/EEOC charge are: "On November 25, 2003 Susan Creamer, General Counsel for AFSCME Council #4 responded to my former attorney Francis A. Miniter that Council #4 does not maintain lists of members who have been arrested . . . . This is a calculated untruth by Council #4;" "On January 15, 2004 . . . [AFSCME Council 4] Executive Director Sal Luciano stated [at a public hearing] that he had no knowledge that there was [sic] any racial discrimination problems;" and "On February 5, 2004 I received a letter from . . . Luciano informing me that once the [arbitration] transcripts were created, he would forward a copy to me.  As of this date of filing this complaint I have not received a copy."  (CHRO Aff., Def. Ex. C, ¶¶ 70, 71, 75.)  All plaintiff's CHRO/EEOC allegations of racially discriminatory

conduct were administratively time-barred as not brought within 180/300 days respectively and plaintiff thus failed to exhaust her administrative remedies with respect to those earlier discriminatory acts. Even a generous reading of the timely allegations quoted above, however, does not disclose any conduct arguably violative of Title VII or CFEPA by Council 4. Thus, the only timely allegations in plaintiff's CHRO/EEOC charge fail to state claims under Title VII/CFEPA, and Counts 1, 2, and 5 against Council 4 will be dismissed.

### B. Failure to state claims upon which relief can be granted (Counts 3, 4, 6, 7, 8)

#### 1. Count 3

In Count 3, plaintiff alleges that her constitutional right to contract was interfered with based on her race and color in violation of 42 U.S.C. § 1981, which the Court construes as brought against defendants Mulhall, Gonzalez, and Luciano.[5]

A § 1981 claim requires proof that: (1) plaintiff is a member of a racial minority; (2) defendants intended to discriminate against her on the basis of race; and (3) the discrimination concerned one of the statute's enumerated activities, including "to make and enforce contracts," 42 U.S.C.

---

[5] It is unclear from the Amended Complaint whom this Count is brought against: contrary to the introductory section of the Complaint stating that Count 3 is not brought against the individual Defendants, only the individual defendants are specifically named in the text of the Count.

§ 1981. See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000). In the Civil Rights Act of 1991, Congress responded to Patterson v. McLean Credit Union, 491 U.S. 164 (1989), and amended § 1981 to define the term "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b). A claim brought under § 1981 in Connecticut must be commenced within three years of the subject conduct. See Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998); Holt v. KMI-Cont'l, Inc., 95 F.3d 123, 131 (2d Cir. 1996).

Thus, considering only the allegations of Luciano's conduct occurring on or after May 24, 2002, plaintiff's Amended Complaint alleges that Sal Luciano, as Union agent, "failed to protect African Americans in general, and Plaintiff specifically, from the retaliation they received for filing discrimination and sexual harassment complaints" (Am. Compl. ¶ 99). The misconduct attributed to Luciano is that he was not responsive to her complaints (id. ¶¶ 100-102, 128) and that he failed to acknowledge how pervasive race discrimination was in the Union (id. ¶ 124). Under the notice pleading requirement of Fed. R. Civ. P. 8(a) and the counsel of Swierkiewicz, 534 U.S. at 515, which held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss, plaintiff's allegations track the elements of a §

8

1981 claim: she is a member of a racial minority (Am. Compl. ¶ 11), defendant Luciano failed to respond to plaintiff's complaints of race discrimination at the DOC, and plaintiff was entitled to the protections of the CBA in place. Luciano's Motion to Dismiss Count 3 will be denied.

### 2. Count 4

Count 4 claims intentional infliction of emotional distress, which requires proof on four elements: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Carrol v. Allstate Ins. Co., 815 A.2d 119, 126 (Conn. 2003). To be liable for intentional infliction of emotional distress, the defendant's conduct must be more than insulting, hurtful, or socially undesirable; it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

Smith alleges no conduct on or after May 24, 2002[6] by either

---

[6] The statute of limitations for intentional infliction of emotional distress in Connecticut is three years. See Rivera v. Men's Wearhouse, Inc., No. 3:05-CV-1907 (WWE), 2006 U.S. Dist.

9

Luciano or Council 4 that could rise to the required level of outrageousness.  While personal emotional distress may result from experiencing discrimination, plaintiff's claims that "[t]he union discriminates against African-Americans," "does not represent African-Americans in the same way it does white union members," and "failed to follow the grievance procedure" (Am. Compl. ¶¶ 44, 45, 88), or that Luciano failed to hold meetings in response to plaintiff's concerns about widespread racism (id. ¶ 101), even if proved to be otherwise unlawful, do not show the extreme and outrageous conduct required for this tort.  Council 4 and Luciano's Motion to Dismiss Count 4 is granted.

### 3.  Count 6

Smith brings Count 6 under Conn. Gen. Stat. § 31-51q, claiming that the union "[d]efendants interfered with [her] rights to free speech" (id. ¶ 6).  As the statute provides that "[a]ny employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution . . . shall be liable to such employee for damages caused by such discipline or discharge," Conn. Gen. Stat. § 31-51q (emphasis added), and as plaintiff's former employer, the CT

---

LEXIS 45810, at *11-12 (D. Conn. June 27, 2006).

DOC, is not a defendant in this case, Count 6 will be dismissed.[7]

### 4. Count 7

Similarly, the Connecticut whistleblower statute which forms the basis for Count 7 provides that "[n]o <u>employer</u> shall discharge . . . any employee because the employee . . . reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body," Conn. Gen. Stat. § 31-51m(b) (emphasis added).[8]

### 5. Count 8

Defendant Luciano moves for dismissal of Count 8 brought against the individual defendants under 42 U.S.C. § 1985. Luciano argues that a § 1985 claim "is not available to enforce rights created by Title VII,"[9] and "[n]owhere in the complaint does the plaintiff allege any other substantive federal right other than the right to be free from discrimination in

---

[7] Although she was formerly a union steward, plaintiff makes no claim that she is suing the union as her employer.

[8] Furthermore, this claim is also time-barred under Conn. Gen. Stat. § 31-51m(c).

[9] "[S]ection [1985] creates no substantive rights but merely 'provides a remedy for violation of the rights it designates,' . . . and the Supreme Court has held that in light of the enforcement and conciliation mechanism created by Congress for claims under Title VII, . . . 'deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).'" <u>Sherlock v. Montefiore Med. Ctr.</u>, 84 F.3d 522, 527 (2d Cir. 1996) (quoting <u>Great Am. Fed. Savings & Loan Assoc. v. Novotny</u>, 442 U.S. 366, 372-78 (1979)).

11

employment, which is already covered by Title VII." (Def. Mem. at 7-8.) However, because Title VII does not apply to individuals, Luciano's argument is inapposite.

Section 1985 prohibits two or more persons, including private persons, see Griffin v. Breckenridge, 403 U.S. 88, 105 (1971), from conspiring to "depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3). In Count 8, plaintiff alleges that Luciano, with Mulhall and Gonzalez, "acted in concert to bring about the termination of Plaintiff because of her race and color, and because of her opposition to discriminatory and unlawful practices of the unions" (Am. Compl. ¶ 154). Although plaintiff alleges that Luciano mischaracterized and failed to address her complaints of racial harassment and discrimination (id. ¶¶ 101, 102), defendant Luciano is not included among those whom plaintiff alleges "agreed and conspired between themselves and with members of the [DOC] to fabricate a lie against Plaintiff claiming, among other things, that Plaintiff had threatened to shoot Gonzales and her young child . . . . in order to interfere with Plaintiff's right to contract" (id. ¶ 103), resulting in plaintiff's being "arrested, locked up, charged and placed on administrative leave" (id. ¶ 104). Accordingly, Luciano's Motion to Dismiss Count 8 is granted.

12

C.  **Failure to serve timely process**

As a general argument, defendants claim that the Court's Order allowing an extension of time for service of the original Complaint on defendants [Doc. #7] was invalid because plaintiff's request for the extension was based on disingenuous representations that she did not know "how to contact Council 4's and Luciano's attorney" and that "she did comply with Rule 4(d)." (Def. Mem. at 10.)  Plaintiff responds that the Court properly issued the Order pursuant to Fed. R. Civ. P. 6(b)(2), and that all defendants were served by the deadline ordered by the Court. (Pl. Opp. Mem. at 34-35.)[10]

The Court issued the Order extending time for service on a finding of "excusable neglect" under Fed. R. Civ. P. 6(b)(2), assuming that plaintiff's request for extension of time was nonfrivolous and necessary as required by Fed. R. Civ. P. 11(b). This ruling was unchallenged by defendants at the time it was granted in November 2005, and the Court will not now disturb that decision.  Defendants' Motion to Dismiss all counts on this ground will be denied.

IV. **Conclusion**

Accordingly, defendants' Motion to Dismiss [Doc. #21] is

---

[10] Mullhall was served on December 1, 2005 [Doc. #8], and Gonzales on December 8, 2005 [Doc. #9].  The docket reflects no return of service for defendant Local 1565.

13

DENIED on Count Three and GRANTED on all other counts.

IT IS SO ORDERED.

/s/

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 8th day of March, 2007.**